IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


TYRONE JOHNSTON,                  : CIVIL ACTION
                                  : NO. 15-04800
                                  :
        Petitioner,               :
                                  :
v.                                :
                                  :
LAWRENCE MAHALLY,[1]              :
DISTRICT ATTORNEY OF COUNTY OF    :
PHILADELPHIA, and                 :
ATTORNEY GENERAL OF THE STATE     :
OF PENNSYLVANIA                   :
                                  :
        Respondents.              :


**M E M O R A N D U M**


EDUARDO C. ROBRENO, J.                        December 21, 2018


        In a consolidated bench trial, Petitioner Tyrone

Johnston ("Petitioner") was convicted of the first-degree

murders of Jamel Conner and Stephanie Labance.[2]  Petitioner was

sentenced to life imprisonment for each murder conviction.  In

relation to his conviction for the murder of Ms. Labance,

Petitioner filed a pro se petition (the "Petition") for a writ

---

[1]      See Rules Governing Section 2254 Cases in the United
States District Courts, Rule 2.

[2]      In connection with the two murders, Petitioner was
also convicted of one count of criminal conspiracy and two
counts of possessing instruments of crime.

of habeas corpus under 28 U.S.C. § 2254 seeking relief on multiple grounds.

The case was referred to Magistrate Judge Lynne Sitarski for a report and recommendation ("R&R"). Magistrate Judge Sitarski recommended that the Petition be denied on all nine grounds raised. Petitioner conceded the R&R on all but two grounds, objecting to the recommendations to deny relief for his claims that he suffered from: 1) a violation of the Sixth Amendment's Confrontation Clause in relation to the admission of autopsy reports and testimony of a medical examiner who did not conduct the autopsies (Ground Two); and 2) ineffective assistance of counsel in relation to trial counsel's failure to seek relief for lack of a speedy trial (Ground Four).

For the reasons set forth below, the Court approves the R&R as to Grounds One, Three, Five, Six, Seven, Eight, and Nine denies the Petition on those grounds. Following de novo review of Grounds Two and Four, the Court denies the Petition on those grounds. Finding no merit to any of the grounds raised, the Court denies issuing a writ of habeas corpus and denies issuing a certificate of appealability.

# Table of Contents

I.   BACKGROUND ............................................. 4

  A.   Procedural History ..................................... 4

  B.   Ground Two -- Violation of the Confrontation Clause ..... 6

  C.   Ground Four -- Ineffective Assistance of Counsel for
  Failure to Raise a Speedy Trial Claim ...................... 9

II.  LEGAL STANDARD FOR HABEAS RELIEF ........................ 15

  A.   Procedural Requirements .............................. 15

  B.   Referral to a Magistrate Judge for Report and
  Recommendation ............................................ 19

  C.   Merits of Habeas Petition ............................ 20

III. GROUND TWO -- CONFRONTATION CLAUSE ..................... 23

  A.   Clearly established Federal law ...................... 24

  B.   Determination of the facts ........................... 29

  C.   Conclusion ........................................... 30

IV.  GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A
RULE 600 CLAIM ............................................... 31

V.   GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A
SIXTH AMENDMENT CLAIM ........................................ 33

  A.   The R&R and Petitioner's Objections .................. 33

  B.   Petitioner's claim is unexhausted and procedurally
  defaulted ................................................. 34

  C.   The merits of the Sixth Amendment-based claim ......... 38

VI.  GROUNDS ONE, THREE, AND FIVE TO NINE .................... 47

VII.  CERTIFICATE OF APPEALABILITY .......................... 47

VIII.   CONCLUSION ......................................... 48

## I. BACKGROUND

### A. Procedural History

This case proceeded through the state courts in a complicated manner that is not relevant to the Petition.[3] Accordingly, a recitation of only the pertinent aspects of the case will suffice at this juncture.[4]

Petitioner was tried in the Philadelphia Court of Common Pleas ("Trial Court") and convicted of the first-degree murders of Stephanie Labance (Indictment No. CP-51-CR-1300475-2006) and Jamel Conner (Indictment No. CP-51-CR-0004489-2007), and other crimes related to the two murders. See ECF No. 1, Ex. A at 1 n.1 (Post-Conviction Relief Act Court Opinion, April 28, 2014).

Following the protracted post-trial state court proceedings, Petitioner filed a § 2254 petition raising eight grounds for relief in connection with his conviction for the first-degree murder of Stephanie Labance. See ECF No. 1 at 10-20; see also ECF No. 32 at 4-5. The Commonwealth of Pennsylvania filed a response in opposition to the Petition, ECF

---

[3]       A comprehensive review of the timeline and complexities of the filings in this case is provided in the R&R. See ECF No. 32 at 1-6.

[4]       Respondents submitted portions of the state court record in hard copy. See ECF No. 32 at 1 n.2. The documents were indexed and numbered as D1 to D30. Following the convention used in the R&R, the Court refers to the state court record hard-copy documents as SCR No. __. See id.

No. 23, and Petitioner filed a reply, ECF No. 28, in which he

raised an additional ground that was not in the Petition.  See

ECF No. 32 at 5-6.

The R&R addressed all nine grounds brought by the

Petitioner during the § 2254 proceedings, and all nine were

recommended for denial.  See id. at 39.  Petitioner objected on

only two grounds, and "concede[d] to the remaining [seven

grounds] as presented [in the R&R]."[5]  ECF No. 39 ¶ 20.  The

objections relate to Ground Two (violation of the Confrontation

Clause) and Ground Four (ineffective assistance of counsel for

_____

[5]      The numbering of the grounds follows the numbering in
the R&R, which in turn was based on Petitioner's numbering in
the Petition.  See ECF No. 32 at 4-5.

The grounds not objected to and expressly conceded
are:  1) "Rights violated when two independent homicide cases
were consolidated into one trial"; 3) "The verdict was not
sufficient to support the verdicts of guilty"; 5) "The verdicts
of guilty were against the weight of the evidence . . ."; 6)
"Petitioner was denied his due process rights and effective
assistance of both direct and collateral review counsel, when
both Counsel Siegel and Cotter failed to seek consolidation of
Petitioner's direct appeals for both the Conner and Labance
cases. Likewise, Petitioner's PCRA issues should have been
consolidated for both the Labance and Conner cases"; 7)
"Petitioner was denied the effective assistance of counsel as
guaranteed under the United State Constitution, when his Counsel
failed to hire a ballistics expert and introduce expert
ballistics testimony . . . "; 8) "Petitioner was denied the
effective assistance of counsel as guaranteed under the United
States Constitution, when his Counsel without objection allowed
in inadmissible evidence regarding the murder of Paul Chaldek,
which Petitioner was not charged or on trial for"; 9) "the
States courts violated [Petitioner's] speedy trial rights in
which the Six Amendment to the United States Constitution
protects."  See ECF No. 1 at 10-20; ECF No. 28 at 15; ECF No. 32
at 4-5; ECF No. 39 ¶ 20.

failure to raise a speedy trial claim).  See id. ¶¶ 21-40;
¶¶ 41-75.  The following sections discuss the substance of
Petitioner's claims on these two grounds and the relevant post-
conviction filings.

**B.   Ground Two -- Violation of the Confrontation Clause**

   **1.   Facts relating to the trial**

During the trial, Assistant Medical Examiner Dr. Gary
Collins was permitted to testify regarding the cause and manner
of death of Ms. Labance, as well as the other victim, Mr.
Conner.  ECF No. 30-2 at 138:9-186:13 (N.T. Feb. 25, 2009).
However, Dr. Collins neither conducted nor was present at either
of the autopsies; Dr. Ian Hood conducted Ms. Labance's autopsy,
and Dr. Gregory McDonald conducted Mr. Conner's autopsy.  Id. at
142:13-143:12.  At the time of the trial, Drs. Hood and McDonald
were no longer employed by the Philadelphia Medical Examiner's
Office.  Id. at 143:2-15.  To prepare for his testimony, Dr.
Collins reviewed the written reports by Drs. Hood and McDonald,
as well as the autopsy photographs and toxicology reports.  Id.
at 143:16-144:4; 173:6-22.

At the beginning of Dr. Collins's testimony, the
Commonwealth conducted voir dire as to his qualifications and
experience.  Id. at 138:22-141:18.  The Commonwealth then
tendered Dr. Collins as "an expert in the field of forensic
pathology."  Id. at 141:19-21.  Defense counsel opted not to

6

conduct voir dire of Dr. Collins.  Id. at 141:22-142:4.  The
court qualified Dr. Collins as competent to testify by way of
expert opinion in the field of forensic pathology.  Id. at
142:5-7; Pa. R. Evid. 702.

After Dr. Collins had testified about who had
conducted the autopsies and written the reports in the case, he
was asked whether he was "able to draw a conclusion [himself]
regarding the cause and manner of death of Mr. Jamel Conner,
based on the information [he] received from Dr. McDonald's
examination."  Id. at 144:12-15.  Defense counsel objected on
the basis that Dr. Collins "didn't view the body, and [was] not
competent to testify as to the autopsy results merely from
reading someone else's report."  Id. at 144:18-21.  Dr. Collins
then testified that he was able to give competent testimony and
had given testimony in similar circumstances, and for both Drs.
McDonald and Hood.  Id. at 144:24-145:20; 146:6-11.

After a few more questions, defense counsel again
objected, and a lengthy sidebar discussion ensued.  Id. at
147:18-148:20; 150:5-159:14.  Defense counsel explicitly stated
that the objection was not to Dr. Collins being allowed to refer
to the report, but to the fact that there were additional
photographs that had not been provided to the defense in
discovery.  Id. at 148:2-20.  The court and counsel discussed
Dr. Collins's ability to testify about the cause of death based

on the photographs or contents of the report; whether a defense expert could, in theory, testify from the same materials; whether there were issues actually in dispute concerning the victims being shot, the wound paths caused by the bullets, and the gunshots as a cause of death; and whether the autopsy reports were business records.  Id. at 147:18-148:20; 150:5-159:14.  Defense counsel indicated that the cause of death from multiple gunshot wounds was not disputed.  Id. at 153:16-154:8; 155:19-156:8.  Further, defense counsel conceded that a defense expert could base his or her testimony on the report and photographs, but there would likely be additional photographs of the inside of the body.  Id. at 154:9-155:18.  Although there was some discussion of business records, defense counsel did not clearly raise a hearsay objection.  The court allowed Dr. Collins to continue his testimony.  Id. at 159:7-9.

### 2.  Post-trial proceedings

Following the denial of his post-sentencing motions, Petitioner appealed, raising several challenges including the allegation that his right to confront adverse witnesses had been violated.  SCR No. D10; SCR No. D13 at 2, 5, 8-9.  On direct appeal, the Superior Court affirmed the Trial Court.  SCR No. D15 at 1; 8-10; see also ECF No. 23-1.  Like the Trial Court, the Superior Court reasoned that Dr. Collins had not simply read in portions of another medical examiner's report, but gave his

own opinions based on the facts in the reports and the photographs.  SCR No. D15 at 9.  Furthermore, the Superior Court noted that defense counsel took the opportunity to cross-examine Dr. Collins.  Id.

### 3. Habeas petition

In the Petition, Petitioner asserts that his rights under the Constitution were violated because he was prevented from confronting and cross-examining the medical examiner who performed the autopsy and wrote the report.  ECF No. 1 at 10.

Petitioner argues that the state courts adjudicated his claim by finding that:  1) "the autopsy reports were non-testimonial and thus did not violate petitioner['s] confrontation rights," and 2) both [Drs. McDonald and Hood] were unavailable to testify."  ECF No. 6 at 11.  Petitioner further argues that the state courts should have taken existing Supreme Court precedent that was not directly on point and extended it to his case, and that to not do so was unreasonable.  Id. at 14-15.

## C. Ground Four -- Ineffective Assistance of Counsel for Failure to Raise a Speedy Trial Claim

### 1. Facts relating to the trial

The criminal complaint for the killing of Ms. Labance was filed on July 14, 2006, and the trial began on February 17,

2009.[6]  See ECF No. 23-3 at 2.  Trial counsel did not file a motion asserting a denial of Petitioner's right to a speedy trial.

## 2.  Post-trial proceedings

Following his conviction, Petitioner asserted an ineffective assistance claim pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA") (42 Pa. Cons. Stat. §§ 9541-46). First, acting pro se, Petitioner filed a PCRA petition listing the indictment numbers for both murder convictions.  SCR No. D17, Motion for Post Conviction Collateral Relief at 1.  In the PCRA petition, Petitioner indicated that he was eligible for relief, in part, because of a violation of the Constitution of Pennsylvania or the Constitution of the United States, and for ineffective assistance of counsel.  Id. at 2.  Petitioner filed a memorandum of law in support of his PCRA petition, but only listed the indictment number for the Labance conviction.  SCR No. D18 at 1.  In the memorandum, Petitioner indicated the same general bases for relief, and then stated four issues:  (a) denial of his constitutional rights in relation to the arraignment; (b) denial of his constitutional rights in relation to pretrial conference hearings; (c) trial counsel's failures during plea negotiations; and (d) "Trial Counsel's fail[ure] to

---

[6]       Petitioner states "[f]rom the date the complaint was filed on 7-14-06 to the date of trial on 2-7-09, a period of 915 days had elapsed."  ECF No. 1 at 15.

raise [Petitioner's] right to a speedy trial pursuant to the 6th

and 14th Amendment[s] to the U.S. Constitution." <u>Id.</u> ¶¶ 12-13.

The memorandum presented the facts and legal arguments for each

of the four issues, including the Sixth Amendment claims. <u>See</u>

<u>id.</u> ¶ 30.

Subsequently, attorney John P. Cotter entered his

appearance for petitioner, and filed a document titled "Amended

Petition under Post-Conviction Relief Act" bearing only the

indictment number for the Labance conviction. <u>See</u> SCR No. D21,

Amended Petition at 1. In the amended PCRA petition, attorney

Cotter stated: "This Amended Petition specifically incorporates

all factual allegations in [the original PCRA petition] as

though expressly set forth herein." <u>Id.</u>, Amended Petition ¶ 4.

The amended PCRA petition then stated that Petitioner was

asserting violations of the Constitutions of the U.S. and

Pennsylvania, as well as Pennsylvania's Rules of Criminal

Procedure:

> Petitioner, hereafter also referred to
> as the defendant, believes and
> therefore avers the following errors
> entitling him to relief in this Court:
>
> > a. Defendant's trial defense
> > counsel was ineffective because
> > he failed to file and litigate
> > an omnibus motion requesting
> > that the charges against
> > defendant be dismissed with
> > prejudice for lack of speedy
> > trial under the U.S. and

Commonwealth Constitutions and
Pa. Rule of Crim. Pro. 600.

Id., Amended Petition ¶ 5.  The remainder of that paragraph
listed facts and allegations about the timing and delays.  See
id.

The amended PCRA petition was accompanied by a
memorandum of law (again bearing only the indictment number for
the Labance conviction) that made legal arguments in specific
regard to Pennsylvania Rule of Criminal Procedure 600 ("Rule
600").  Id., Memorandum in Support of Amended Petition at 1, 2-
4.  The Sixth Amendment was not at all mentioned, and the words
"U.S. Constitution" make only an evanescent appearance.  See
id., Memorandum in Support of Amended Petition at 1.

The Commonwealth moved to dismiss the petition,
arguing solely that Petitioner's Rule 600 claim was meritless.
See SCR No. D22.  The Commonwealth challenged how and why
Petitioner had attributed to the Commonwealth all of the delays
in bringing the case to trial that were not caused by the
Petitioner.  See id.  The Commonwealth's motion to dismiss
listed both of the indictment numbers and contained docket
sheets for both convictions as exhibits.  Id. at 1, Exs. A, B.

Subsequently, the Commonwealth moved to file a
corrected motion.  SCR No. D23.  Counsel for the Commonwealth
explained that he had inherited the case and had only the

amended PCRA petition in the file, and so had moved to dismiss both cases by challenging the Rule 600 claims in the amended PCRA petition.  Id. at 1.  The Commonwealth's counsel explained that he had been contacted by Petitioner's PCRA counsel, attorney Cotter, who had explained that the Rule 600 claim pertained only to the Labance conviction, and that a separate petition had been filed in connection to the Conner conviction. Id.

The Commonwealth then filed an amended motion to dismiss, making the same substantive arguments but noting the separate proceedings.  See SCR No. D24.

The PCRA Court held an evidentiary hearing as to the Rule 600 issue, and then denied the PCRA petition.  See ECF No. 1, Ex. A at 3 (see also SCR No. D29); ECF No. 30-6 (transcript of hearing held on November 25, 2013); SCR No. D26, Criminal Docket.

Attorney Cotter filed a notice of appeal of the PCRA Court's decision.  SCR No. D26.  Pursuant to an order of the PCRA Court, issued under Pennsylvania Rule of Appellate Procedure 1925(b), the notice of appeal identified several errors complained of on appeal.  SCR No. D28.  The errors listed included trial counsel's failure to file a motion to dismiss for lack of a speedy trial, and the denial of the "U.S. and State Constitutional right to a speedy/prompt trial."  Id.

Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), the PCRA Court issued its opinion and explained why the Rule 600 claim failed, thoroughly listing the delays and the bases for attributing or excusing those delays in bringing the case to trial. ECF No. 1, Ex. A at 26-30. The PCRA Court's opinion did not mention either the Sixth Amendment or the U.S. Constitution in connection to the claim. See id.

Petitioner maintained his appeal to the Superior Court. Attorney Cotter filed the brief in support and included the 1925(b) statement listing the alleged errors. ECF No. 23-6. The sections in the brief covering the "statement of the case" and the "summary of the argument" refer only to Rule 600, arguing that trial counsel did not file a pre-trial Rule 600 motion despite there being a Rule 600 violation. Id. at 5. Throughout the brief, the argument concerned Rule 600. Id. at 6-8. In one, and only one instance, the brief mentions peripherally the Sixth Amendment:

> The Purpose of **Pa. R. Crim. P. 600.**
> **Prompt Trial.** is to protect the United
> States and Commonwealth Constitutional
> Rights of the defendant to a speedy
> trial. See **Pa. Const. Art. I sec. 9.**
> **and 6th Amendment U.S. Constitution;**
> **Commonwealth v Hamilton, 297 A2d 127**
> **(Pa. 1972).**

Id. at 7 (emphasis in original).

The Superior Court affirmed the PCRA Court's denial of the PCRA petition. ECF No. 23-3 at 12. After explaining the contours of Rule 600 and its application, the Superior Court determined there was no merit to the Rule 600 claim. Id. at 6-12. The Superior Court's opinion did not mention the Sixth Amendment. See id.

### 3. Habeas petition

In the Petition, Petitioner asserts he was "denied effective assistance of counsel when [his attorney] failed to file and litigate a speedy trial motion." ECF No. 1 at 15.

## II. LEGAL STANDARD FOR HABEAS RELIEF

### A. Procedural Requirements

"State courts, like federal courts, are obliged to enforce federal law." O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). State courts are the "principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011). Nonetheless, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a person in state custody who wishes to assert that "he is in custody in violation of the Constitution or laws or treaties of the United States" may file a petition in federal court seeking the issuance of a writ of habeas corpus. See 28 U.S.C. § 2254.

State courts have an initial "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (quotation marks omitted) (citation omitted). To respect the state's sovereign powers, the AEDPA has a procedural requirement that the petitioner must first exhaust the remedies available in the state court. Id. § 2254(b)(1); Harrington, 562 U.S. at 103 ("[A] habeas petitioner challenging a state conviction must first attempt to present his claim in state court.") (citing 28 U.S.C. § 2254(b)).

To satisfy the exhaustion requirement, a federal claim must be "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989) (quotation marks omitted) (emphasis in original); see also Picard, 404 U.S. at 276 ("Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). Fair presentation requires a petitioner to present "the federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 479 (3d Cir. 2017), cert. denied sub nom. Mathias

v. Brittain, 138 S. Ct. 1707 (2018) (quotation marks omitted)
(quoting Robinson v. Beard, 762 F.3d 316, 328 (3d Cir. 2014));
see also Baldwin v. Reese, 541 U.S. 27, 29 (2004).

To complete the exhaustion requirement, the petitioner
"must give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the
State's established appellate review process." O'Sullivan, 526
U.S. at 845. The Pennsylvania Supreme Court has ordered that
"in all appeals from criminal convictions or post-conviction
relief matters, a litigant shall not be required to petition for
rehearing or allowance of appeal following an adverse decision
by the Superior Court in order to be deemed to have exhausted
all available state remedies respecting a claim of error." In
re Exhaustion of State Remedies in Criminal and Post-Conviction
Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa.
May 9, 2000); see also Lambert v. Blackwell, 387 F.3d 210, 233
(3d Cir. 2004). Thus, in Pennsylvania, one complete round of
appellate review includes fairly presenting the federal claim
through the Superior Court, and a petitioner "need not seek
review from the Pennsylvania Supreme Court in order to give the
Pennsylvania courts a full opportunity to resolve any
constitutional claims." Lambert, 387 F.3d at 233–34.

A petitioner who fails to properly present federal
claims to the state court in a timely fashion under state law

17

rules procedurally defaults on those claims.  O'Sullivan, 526

U.S. at 848.  A federal court may not review the defaulted

claims unless the petitioner can demonstrate either "cause for

the default and actual prejudice as a result of the alleged

violation of federal law," or "that failure to consider the

claims will result in a fundamental miscarriage of justice."

Coleman v. Thompson, 501 U.S. 722, 750 (1991).

　　　　To show "cause," a petitioner must show "some external

impediment preventing counsel from constructing or raising the

claim."  Goldblum v. Klem, 510 F.3d 204, 215 (3d Cir. 2007)

(quoting McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  The

prejudice must be "actual prejudice," and the petitioner must

show that the "errors . . . worked to his actual and substantial

disadvantage, infecting his entire trial with error of

constitutional dimensions."  Id. at 215-16 (quoting United

States v. Frady, 456 U.S. 152, 170 (1982)).

　　　　"The fundamental miscarriage of justice exception is

narrow."  Coleman v. Greene, 845 F.3d 73 (3d Cir. 2017).  It

only applies to "cases in which new evidence shows it is more

likely than not that no reasonable juror would have convicted

the petitioner."  McQuiggin v. Perkins, 569 U.S. 383, 395 (2013)

(quotation marks and alterations omitted).

**B. Referral to a Magistrate Judge for Report and Recommendation**

A district court may refer an application for a writ of habeas corpus to a United States magistrate judge for a report and recommendation. See Rules Governing § 2254 Cases, R. 10 ("A magistrate judge may perform the duties of a district judge under these rules, as authorized under 28 U.S.C. § 636."). A prisoner may object to the magistrate judge's report and recommendation within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. Local Civ. R. 72.1(IV)(b). The district court then "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

Ultimately, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A court is not required to review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is 'not timely or not specific.'" (emphasis added) (quoting Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984)).

**C.   Merits of Habeas Petition**

A federal court may only grant relief in a § 2254 habeas petition if the state court's adjudication of the merits of the claims raised resulted in a decision that was:  "(1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The Supreme Court has explained the necessary analysis for each clause of § 2254(d).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

In both of the "unreasonable" clauses, "the federal habeas court [is] to train its attention on the particular reasons--both legal and factual--why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision."  Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018) (quotation marks and citations omitted).  "[W]hen the last state court to decide a prisoner's federal

claim explains its decision on the merits in a reasoned opinion

. . . , a federal habeas court simply reviews the specific

reasons given by the state court and defers to those reasons if

they are reasonable." Id. at 1192.

"Under the 'unreasonable application' clause, a

federal habeas court may grant the writ if the state court

identifies the correct legal principle from [the Supreme]

Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case." Williams, 529 U.S. at 413.

"[T]he 'unreasonable application' inquiry . . . asks whether the

state court's application of clearly established federal law was

objectively unreasonable." Id. at 409. "[A]n unreasonable

application of federal law is different from an incorrect

application of federal law." Id. at 410. "[A] federal habeas

court may not issue the writ simply because that court concludes

in its independent judgment that the relevant state-court

decision applied clearly established federal law erroneously or

incorrectly. Rather, that application must also be

unreasonable." Id. at 411.

Under the "unreasonable determination of the facts"

clause, "state-court factual determinations [may not be

characterized] as unreasonable merely because [the federal

court] would have reached a different conclusion in the first

instance." Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015)

(quotation marks omitted) (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301 (2010)). Rather, the federal court "must accord the state trial court substantial deference." <u>Id.</u> "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" <u>Davis v. Ayala</u>, 135 S. Ct. 2187, 2199-200 (2015) (quoting <u>Rice v. Collins</u>, 546 U.S. 333, 338 (2006)).

A federal court cannot grant habeas relief on state law grounds. <u>Sistrunk v. Rozum</u>, 674 F.3d 181, 186 (3d Cir. 2012). Instead, a federal court may only grant relief on the ground that a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); <u>see also</u> <u>Carnevale v. Superintendent Albion Sci</u>, 654 F. App'x 542, 547 (3d Cir. 2016) (quoting 28 U.S.C. § 2254(a)). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005); <u>see also</u> <u>Rountree v. Balicki</u>, 640 F.3d 530, 539 (3d Cir. 2011) ("The District Court . . . was bound to accept the state court's conclusions of state law in applying [the state's rules].").

In conducting its review of a habeas petition, the federal court should bear in mind that "[a] habeas corpus petition prepared by a prisoner without legal assistance may not

be skillfully drawn and should thus be read generously." <u>Rainey</u>
<u>v. Varner</u>, 603 F.3d 189, 198 (3d Cir. 2010); <u>see also</u> <u>U.S. ex</u>
<u>rel. Montgomery v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969)
("It is the policy of the courts to give a liberal construction
to pro se habeas petitions.").

Petitioner has filed objections to Ground Two (seeking
relief based on the alleged violation of the "Confrontation
Clause") and Ground Four (seeking relief based on the alleged
failure of counsel to challenge a violation of Pennsylvania's
speedy trial protections under Rule 600). The Court makes a de
novo determination of the merits of Grounds Two and Four, as
discussed below.

## III. GROUND TWO -- CONFRONTATION CLAUSE

Petitioner's Confrontation Clause claim went through
one complete round of appellate review by the state courts.
Therefore, the Court may consider the merits of Petitioner's
argument in support of his petition for habeas relief.

The Court denies the Petition on this ground for
failing to meet either of the two tests in § 2254(d). First,
the state courts did not adjudicate the Confrontation Clause
claim "contrary to, or [by] involv[ing] an unreasonable
application of, clearly established Federal law, as determined
by the Supreme Court of the United States." 28 U.S.C.
§ 2254(d)(1). Petitioner concedes that there is no clearly

established Federal law concerning autopsy reports.

Furthermore, given the disagreement among the Circuit Courts of

Appeals, it was not so obvious that any fairminded jurist would

find that the autopsy reports were testimonial.

Second, the state courts did not adjudicate the claim

"based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."

28 U.S.C. § 2254(d)(2).  The state courts made no finding about

the availability of the medical examiners who wrote the autopsy

reports.  Furthermore, the state courts did not have to rule on

a hearsay objection to the reports because none was made.

### A.   Clearly established Federal law

The Sixth Amendment's Confrontation Clause guarantees

that a criminal defendant has the right "to be confronted with

the witnesses against him."  U.S. Const. amend. VI.  The

Confrontation Clause prevents the "admission of testimonial

statements of a witness who did not appear at trial unless he

was unavailable to testify, and the defendant had had a prior

opportunity for cross-examination."  Davis v. Washington, 547

U.S. 813, 821 (2006) (quoting Crawford v. Washington, 541 U.S.

36, 53-54 (2004)).  The "testimonial character of the statement

. . . separates it from other [types of] hearsay."  Id.

Petitioner argues that the autopsy reports were

testimonial.  But the Supreme Court has not ruled on whether

autopsy reports are testimonial or not, and Petitioner and the Commonwealth agree that there is no Supreme Court precedent holding that autopsy reports are testimonial. See ECF No. 6 at 14 ("The mere fact that no United States Supreme Court decision is directly on point and says autopsy reports are testimonial, does not in and of itself defeat petitioner's claim."); ECF No. 23 at 20 n.6 ("The question of whether autopsy reports are 'testimonial' is unsettled."). Indeed, the Commonwealth cites decisions from the Second and Eleventh Circuit Courts of Appeals to illustrate the division, and a First Circuit decision making the same point. See ECF No. 23 at 20 n.6 (citing United States v. James, 712 F.3d 79, 97-100 (2d Cir. 2013) (not testimonial); United States v. Ignasiak, 667 F.3d 1217, 1231 (11th Cir. 2012) (testimonial); Hensley v. Roden, 755 F.3d 724, 733-34 (1st Cir. 2014) (testimonial question is unsettled)). In his objection to the R&R, Petitioner cited the same cases. See ECF No. 39 ¶ 33.

Undaunted by the unsettled law, Petitioner argues that his claim is not necessarily defeated. ECF No. 6 at 14. Petitioner argues that the state courts should have applied the general principles from the Supreme Court's precedents to his case, and they acted unreasonably by not doing so. See id. at 14-15 (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In support, Petitioner contends:

> Where there is no case directly on
> point, ADEPA permits relief if a state
> court either unreasonably extends a
> legal principle from the Supreme
> Court's precedent to a new context
> where it should not apply or
> unreasonably refuses to extend that
> principle to a new context where it
> should apply.

Id. at 15 (quoting Williams, 529 U.S. at 407) (alterations and
quotation marks omitted).

Petitioner's argument rests on unsound ground, and a
fuller investigation of the quoted passage reveals that the
legal test averred by Petitioner is not Supreme Court precedent.
Petitioner's quote from Williams is misleading because the
context and surrounding discussion were not provided. Before
this quoted passage, the Supreme Court stated that "[t]he Fourth
Circuit's interpretation of the 'unreasonable application'
clause of § 2254(d)(1) is generally correct." Williams, 529
U.S. at 407 (emphasis added). Later in the opinion, the Supreme
Court stated that the Fourth Circuit's holding regarding the
"unreasonably refuse[s] to extend" principle had "some problems
of precision." Id. at 408. And further on, the Supreme Court
explained that the case at hand did not require resolving the
correctness of the Fourth Circuit's approach, and so it declined
to do so, and did not hold that the approach was valid. Id. at
408-09. In context, then, it is clear the quoted legal

principle is a not a pronouncement by the Supreme Court of the law, but a recitation of the Fourth Circuit's view.

Fatally undermining Petitioner's argument, the Supreme Court has since unequivocally rejected the Fourth Circuit's approach.  In a later opinion, the Supreme Court explained that it had taken "no position on the Fourth Circuit's further conclusion that a state court commits AEDPA error if it 'unreasonably refuses to extend a legal principle to a new context where it should apply.'"  White v. Woodall, 572 U.S. 415, 425 (2014) (alteration omitted) (quoting Williams, 529 U.S. at 408-09).  Indeed, the Supreme Court explained that in an opinion issued two months after Williams, a plurality had "paraphrased" the Fourth Circuit's concept but did not grant relief on that basis.  Id. (citing Ramdass v. Angelone, 530 U.S. 156, 166-70 (2000) (plurality opinion)).

The Supreme Court then put an end to the matter, unequivocally rejecting the approach:

> [T]his Court has never adopted the unreasonable-refusal-to-extend rule on which respondent relies.  It has not been so much as endorsed in a majority opinion, let alone relied on as a basis for granting habeas relief.  To the extent the unreasonable-refusal-to-extend rule differs from the one embraced in Williams and reiterated many times since, we reject it.

Id. at 426 (emphasis added).

Ultimately, the Supreme Court in <u>White</u> explained the duty of state courts to follow clearly established Federal law, and under what circumstances it would be unreasonable for state courts to not apply the law to a given set of facts:

> [S]tate courts must reasonably apply the rules <u>squarely established</u> by this Court's holdings to the facts of each case.  The difference between applying a rule and extending it is not always clear, but certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt.  The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is <u>so obvious</u> that a clearly established rule applies to a given set of facts that there could be no <u>fairminded disagreement</u> on the question.

<u>Id.</u> at 427 (citations, quotation marks and alterations omitted; emphasis added).

The foregoing exposition shows why Petitioner's unreasonable-failure-to-extend argument fails for two reasons. First, as already stated above, there is no "clearly established Federal law" or "squarely established" rules concerning autopsy reports.

Second, whatever the clearly established law is, the Circuit Courts disagree about how to apply it to autopsy reports, thus it is not "so obvious" on how to apply existing,

clearly established Federal law such that there is no

"fairminded disagreement."

In response to the R&R, Petitioner argues several

reasons why autopsy reports should be deemed testimonial.  See

ECF No. 39 ¶¶ 34-40.  Whatever the merits of Petitioner's

argument in his objection, based on entries in Black's Law

Dictionary and a hypothetical example, the Court must still deny

the Petition on Ground Two.  Although Black's Law Dictionary is

a staple item for judges, lawyers, and law students alike, that

venerable lexicon is simply not the authority that this Court

must look to in order to resolve the merits of a § 2254

petition.

###    B.    Determination of the facts

Petitioner argues that the Trial Court unreasonably

determined facts by finding that Dr. Hood was unavailable to

testify.  ECF No. 6 at 17.  Petitioner asserts, without support,

that Dr. Hood "was in the general area and susceptible to

subpoena."  Id. at 18.

Petitioner's argument is rendered moot by this Court's

findings discussed above.  The Trial Court was not required to

make any factual findings about Dr. Hood's unavailability to

testify because the autopsy reports were not deemed to be

testimonial.  Absent a determination that the autopsy reports

were testimonial, and without a proper hearsay objection

requiring resolution, the "unreasonably determined facts"
argument is meritless.

### C. Conclusion

The Court finds that the Petition lacks merit on
Ground Two, and therefore denies the Petition on this ground.

Before leaving this topic, the Court notes the
testimony provided by Dr. Collins, and the objections and
discussions at trial. There was no actual dispute that both Ms.
Labance and Mr. Conner died of gunshot wounds and that Dr.
Collins was competent to provide expert testimony to that effect
even without the autopsy reports. First, aside from the autopsy
reports, the photographs showed the wounds made by the multiple
9mm bullets in each victim, and because the victims were shot at
close enough range, the photographs even showed the stippling
patterns on the skin of the victims. Second, as an expert, Dr.
Collins was capable of testifying about the effects of these
gunshot wounds. Third, defense counsel agreed that the cause of
death was not in dispute:

> Trial Court:     It's clearly a shooting.
>                  It's not like it's some
>                  questionable medication or
>                  something like that. It's
>                  clearly a shooting. What's
>                  the big deal here? Cause of
>                  death, let's see, gunshot
>                  wound.
>                  ***
>                  Am I wrong? ***

| | |
|---|---|
| Defense Counsel: | No. |
| | *** |
| Trial Court: | I mean, is the wound path something that is in dispute or something that is critical to the rendering of the opinion as to the cause of death, that it was gunshots? |
| Defense Counsel: | Not that I know. |
| Trial Court: | Multiple gunshot wounds? |
| Defense Counsel: | Not that I know. |

ECF No. 30-2 at 153:24-154:8; 156:1-8.

With the cause of death determinable from other evidence, and defense counsel not disputing the cause of death, even if Petitioner's Confrontation Clause were to be successful, it would not warrant overturning his conviction on the basis that the cause of death of either victim was not proven beyond a reasonable doubt.

## IV.  GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A RULE 600 CLAIM

Petitioner's ineffective assistance claim premised on a failure to file a motion seeking relief for the Commonwealth's alleged violation of Rule 600 went through one complete round of appellate review by the state courts.  Therefore, the Court may consider the merits of Petitioner's argument in support of his petition for habeas relief.

The merits of Johnston's ineffectiveness claim turn solely on the state law question of whether there was any merit to bringing a motion to dismiss the case with prejudice for failing to comply with Rule 600. The Superior Court considered and analyzed the facts of the delays in bringing the case to trial, who was responsible, and the diligence of the Commonwealth, and ruled that there was no merit to a claim that Rule 600 had been violated. See ECF No. 23-3.

This Court must accept the Superior Court's conclusions of state law in applying Pennsylvania's rules. Bradshaw, 546 U.S. at 76; Rountree, 640 F.3d at 539. Thus, this Court is presented with an argument that trial counsel was ineffective for failing to raise a meritless claim. Such a claim of ineffectiveness fails because "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Bui, 795 F.3d 363, 366-67 (3d Cir. 2015) (quoting United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999)).

The Court denies the Petition on Ground Four premised on failing to bring a motion for violating Rule 600.

## V.    GROUND FOUR -- INEFFECTIVE ASSISTANCE FOR FAILING TO RAISE A SIXTH AMENDMENT CLAIM

Petitioner's ineffective assistance claim premised on a failure to file a motion seeking relief for the Commonwealth's violation of the Sixth Amendment did not go through one complete round of appellate review by the state courts.  Furthermore, Petitioner has not shown that there was cause for the failure to present the claim to the state courts or actual prejudice as a result of the alleged violation of federal law.  Finally, there will not be a fundamental miscarriage of justice if the claim is not considered.  Therefore, the Court may not rule on the merits of this claim.

### A.    The R&R and Petitioner's Objections

In the R&R, Magistrate Judge Sitarski explained her findings in a footnote that "[t]o the extent that Petitioner alleges counsel was ineffective for failing to raise a Sixth Amendment speedy trial claim, this ineffectiveness claim is unexhausted and procedurally defaulted."  ECF No. 32 at 22 n.14.

Petitioner's objections to the R&R on this ground argue otherwise--the claim is exhausted and not procedurally defaulted, therefore this Court can review the merits.  ECF No. 39 ¶¶ 41-75.  First, on whether the claim was properly presented to the PCRA Court, Petitioner argues that "it would be clearly unfair and prejudicial to deny your Petitioner this claim based

upon PCRA counsel's incompetent bald assertion regarding Rule
600 and the Sixth Amendment." Id. ¶ 42.  Following this
description of attorney Cotter's efforts, Petitioner argues that
Rule 600, the federal Speedy Trial Act (18 U.S.C. §§ 3161-74),
and the Sixth Amendment are "co-extensive . . . meaning that
they are one [and] the same and a claimed violation of [Rule
600] is a claimed violation of the Sixth Amendment." Id. ¶ 43.
Petitioner then builds on his one-and-the-same proposition to
argue that the state courts had fair notice of his Sixth
Amendment claim.  Id. ¶¶ 43-49.  Finally, Petitioner argues the
merits of the unduly-delayed prosecution claim and the merits of
the ineffectiveness claim.  Id. ¶¶ 50-75.

**B.    Petitioner's claim is unexhausted and procedurally defaulted**

This case presents an issue stemming from disparities
between initial pro se filings and subsequent counseled filings.
To determine whether Petitioner has exhausted his claim, the
Court must determine whether Petitioner presented his Sixth
Amendment claim in such a fashion as to give the state courts
"an initial opportunity to pass upon and correct" the alleged
violation.  Picard, 404 U.S. at 275 (internal quotation marks
omitted).

Pennsylvania's courts reject petitions that would
require combining the filings of a petitioner and his counsel--

so-called "hybrid petitions." See, e.g., Commonwealth of Pa. v. Cooper, 27 A.3d 994, 1000 & n.9 (Pa. 2011) ("[T]he disapproval of hybrid representation is effective at all levels" in Pennsylvania's courts); Hatcher v. Ct. of Common Pleas of Phila. Cnty., 104 A.3d 1155 (2014) (dismissing petition for writ of mandamus as an "improper attempt[] at hybrid representation"); Castillo v. All Jane/John Does Staff/Supervisors from PA Ct. of Common Pleas Clerk of Cts, 672 F. App'x 178, 179 (3d Cir. 2016) (Pennsylvania's "state courts would not entertain hybrid representation").

At least one court within the Eastern District has faced a situation involving differences between pro se and counseled filings. See Blount v. Coleman, Civil Action No. 13-3094, 2014 WL 5317766, at *6-8 (E.D. Pa. Oct. 17, 2014). In Blount, the prisoner filed his initial PCRA petition pro se, listing a speedy trial Sixth Amendment claim. Id. at *7. After filing the petition, the prisoner then obtained counsel who filed an amended petition presenting only a Rule 600 claim. Id. The prisoner later filed an appeal of the PCRA decision linking the Rule 600 claim to a Sixth Amendment claim. Id. The Superior Court "acknowledged" that both claims were raised but only addressed the Rule 600 claim. Id. The district court reviewing the habeas petition found that the prisoner in Blount

had fairly presented the Sixth Amendment claim, and then proceeded to address the merits of that claim.  Id.

Petitioner's case has important differences from Blount.  Unlike in Blount, the federal claim here was not presented to the PCRA Court or Superior Court for the following three reasons.  ECF No. 23-6, Ex. A-1 at 7.  First, Petitioner accepted representation by counsel during the PCRA proceedings.  Petitioner did not object when his counsel filed the amended PCRA petition.  In-so-doing, Petitioner effectively adopted the amended PCRA petition and disavowed the pro se version (the original PCRA petition).  Thus, the only petition before the PCRA Court was the amended PCRA petition because the PCRA Court, like any other court in Pennsylvania, would not consider the pro se-drafted petition alone or in conjunction with the counsel-drafted petition.

Second, the amended PCRA petition only vaguely alludes to federal constitutional rights.  The background to the case and the arguments were premised on state law (Rule 600).  The PCRA Court was not presented with a Sixth Amendment-based claim.

Third, the appeal of the PCRA Court's decision also makes only a glancing referencing to the Sixth Amendment, again in the context of Rule 600.  The argument in the brief concerns Rule 600, not the Sixth Amendment.  The Superior Court was not fairly notified of a Sixth Amendment-based challenge.

Furthermore, unlike in <u>Blount</u>, neither the PCRA Court nor the Superior Court acknowledged that there even was a Sixth Amendment-based claim to consider.

Placing the matter in context, and under the circumstances of this case, it is plain to see that the state courts were not presented with an ineffective assistance of counsel claim premised on a failure to file a Sixth Amendment challenge. Accordingly, Petitioner's federal claim is unexhausted, and given the time bar, procedurally defaulted. <u>See</u> ECF No. 32 at 22 n.14, 24 n.16.

Under the AEDPA, the Court may not consider the merits of Petitioner's Sixth Amendment-based federal claim unless Petitioner demonstrates either: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice.

Petitioner cannot meet either of these two tests. First, he cannot show cause for the default that stems from some external impediment preventing him or his counsel from constructing or raising the claim. Petitioner has demonstrated that he is capable of making arguments and conducting "jailhouse lawyering." There is no showing that both Petitioner and his counsel were prevented from raising the claim. Second, Petitioner cannot show that there was a fundamental miscarriage

of justice.  Petitioner has not shown that there is any new evidence at issue that if considered would make it more likely than not that no reasonable juror would have convicted him.

Accordingly, the Court cannot review Petitioner's Sixth Amendment-based claim.

### C.    The merits of the Sixth Amendment-based claim

Even if the Court were to consider Petitioner's claim of ineffective assistance of counsel for failure to raise a Sixth Amendment challenge, his argument lacks merit because the underlying Sixth Amendment challenge would have lacked merit. Accordingly, relief on this ground could not be granted even if the claim was properly before the Court.

#### 1.    The Sixth Amendment and Rule 600 are not Co-Extensive

To be clear on the nature of the Sixth Amendment claim now at issue, the Court rejects Petitioner's argument that Rule 600 and the Sixth Amendment are co-extensive in regard to the United States Constitution's guarantee of the right to a speedy and public trial.  While Rule 600 sets a time limit, with various rules for determining how to calculate and assess delays, the Sixth Amendment has no such time limit or rules, and so facially the two are not coextensive.  See also Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991) (Pennsylvania's speedy

trial rule "does not define the contours of the federal constitutional right to a speedy trial").

### 2. **Barker** Analysis

The Constitution's guarantee to a speedy trial is not "quantified into a specified number of days or months." Barker v. Wingo, 407 U.S. 514, 523 (1972). To determine whether there has been a deprivation of the right to a speedy trial, the court must use "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." Id. at 530. Four factors are considered: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. Id.

In conducting the speedy trial analysis, "none of the four factors" is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Id. at 533. Instead, the "factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Id.; see also Vanlier v. Carroll, 384 F. App'x 155, 158 (3d Cir. 2010) (balancing of all four factors required).

The Court finds that, on balance, Petitioner has not shown that there was merit to a claim that he was deprived of his Sixth Amendment right to a speedy trial. The Court has considered the reasons for the delays with the presumption that the factual findings of the Superior Court are correct, unless

the petitioner presented clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003) (clear and convincing standard in § 2254(e)(1) applies to factual issues). In doing so, the Court presumes both explicit and implicit findings of fact are correct. <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286 (3d Cir. 2000).

### 3. **Factor one: length of delay**

To trigger a speedy trial analysis, the petitioner "must allege that the interval between accusation [or arrest] and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." <u>Doggett v. United States</u>, 505 U.S. 647, 651-52 (1992) (citing <u>Barker</u>, 407 U.S. at 530-31). "Depending on the nature of the charges, the lower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year." <u>Id.</u> at 652 n.1.

"If the [petitioner] makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." <u>Id.</u> at 647 (quoting <u>Barker</u>, 407 U.S. at 533-34). Once the showing is made, the court must consider and balance all of the <u>Barker</u> factors. <u>Id.</u>; <u>see also</u> <u>Vanlier</u>, 384 F. App'x at 158 (admonishing the state

court for conducting a "short-circuited" analysis that focused only on the prejudice factor).

Here, Petitioner asserts variously that 915 days (ECF No. 1 at 15) or 31 months (see, e.g., ECF No. 39 ¶ 52) elapsed between his arrest and trial in the Labance case. Whichever of these two periods is considered, the length of time (about two and a half years) is sufficient to trigger the initial presumption that Petitioner was prejudiced.

To be clear on the number of days at issue, the Superior Court found that the criminal complaint was filed on July 14, 2006 and the trial started on February 17, 2009. ECF No. 23-3 at 10. This is a total of 949 days, or about 31 months.

### 4. Factor two: reason for delay

For the second factor, if the government has exercised "reasonable diligence" between arrest and trial, a petitioner's claim will fail. Doggett, 505 U.S. at 656. Such a result will "generally follow as a matter of course however great the delay, so long as [the petitioner does] not show specific prejudice to his defense." Id. On the other hand, if the government intentionally delays bringing the case to trial in order "to gain some impermissible advantage at trial," the court will weigh that fact "heavily against the government." Id.

Negligent conduct "occupies the middle ground," and neither compels relief nor precludes relief, even if the petitioner cannot show how he has been prejudiced.  Id. at 656-57.  But negligence "still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun."  Id. at 657.  Negligence and overcrowded courts are "more neutral reason[s]," and they weigh less heavily against the government.  Gov't of Virgin Islands v. Pemberton, 813 F.2d 626, 628 (3d Cir. 1987).

"[T]oleration of negligence varies inversely with its protractedness."  Doggett, 505 U.S. at 657 (citing Arizona v. Youngblood, 488 U.S. 51 (1988)).  Thus, "to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice."  Id.

"Findings on the cause of the delay are entitled to a § 2254(d) presumption of correctness if petitioner had a fair opportunity to present his version of events and the state's findings on the issue are fairly supported by the record."  Hakeem v. Beyer, 990 F.2d 750, 767 (3d Cir. 1993).

During the 949 days between arrest and trial, there were several delays caused by the Petitioner and the Trial Court.  ECF No. 23-3 at 10-12.  The PCRA Court prepared a chart listing the case chronology from the time between the arrest and

trial.  See ECF No. 1, Ex. A at 27-29.  The chart was based on

the state court docket and testimony adduced at the PCRA hearing

held on November 25, 2013.  See ECF No. 1, Ex. A; ECF No. 30-6.

        Several delays are attributable to the Petitioner, and

those amount to 425 days in total.  ECF No. 1, Ex. A at 27-29

(7/19/2006-8/2/2006; 8/30/2006-10/3/2006; 11/16/2006-12/13/2006;

12/13/2006-1/10/2007; 1/10/2007-1/11/2007; 1/11/2007-2/1/2007;

8/6/2007-4/23/2008; 9/15/2008-10/10/2008; 11/10/2008-11/24/2008;

11/24/2008-2/17/2009).  Of the remaining 524 days, 261 days were

attributable to the Trial Court:  a period of 176 days was

caused by the Trial Court judge's need for surgery; a period of

85 days was caused by the Trial Court's scheduling error.  Id.

(4/23/2008-9/15/2008).  Thus, taking into account the delays by

Petitioner and the Trial Court, only 263 days were attributable

to the Commonwealth, which is a perfectly reasonable amount of

time in which to prepare for and bring a double murder case.

The assistant district attorney testified that he was ready to

proceed every time the case was listed for trial.  Id. Ex. A at

29.

        Petitioner has made no showing that the delays

attributable to the Commonwealth were due to bad faith or

dilatory purposes.  Petitioner argued to the Superior Court that

the Commonwealth should have sought to have the case assigned to

another judge during the delay caused by the judge's surgery.

At most, however, the Commonwealth's failure to seek a new trial judge was negligence, and thus at most, the delay of 176 days (six months) would weigh only slightly in Petitioner's favor.

### 5. Factor three: assertion of speedy trial rights

For the third factor, Petitioner is responsible for asserting the right. Barker, 407 U.S. at 531. "[F]ailure to assert the right . . . make[s] it difficult for a [petitioner] to prove that he was denied a speedy trial." Id. at 532. For the Court to consider assigning any weight to this factor, a "petitioner must show he made a 'reasonable assertion of the speedy trial right." Hakeem, 990 F.2d at 764 (alteration omitted) (quoting Pemberton, 813 F.2d at 629). The Third Circuit has given only little weight in favor of a petitioner where no formal correspondence or motion was made, and the petitioner only wrote informal correspondence to the trial court. Id. at 766. If a petitioner makes no assertion, the factor weighs against the petitioner's claim. See United States v. Battis, 589 F.3d 673, 681 (3d Cir. 2009); United States v. Coleman, No. CIV.A. 10-2013, 2012 WL 1231800, at *4 (E.D. Pa. Apr. 12, 2012); United States v. Woods, No. 3:CR-06-063, 2013 WL 1246816, at *7 (M.D. Pa. Mar. 27, 2013).

Here, Petitioner did not assert the right by sending any formal or informal correspondence to the Trial Court. Instead, Petitioner avers that he "asserted this right by

bringing it up to his trial counsel on several occasions" who never acted upon Petitioner's assertions.  ECF No. 39 ¶ 65.  By failing to at least write an informal letter to the Trial Court, Petitioner failed to make any assertion of the right.  The third Barker factor weighs against Petitioner.

### 6.  Factor four: actual prejudice

On the fourth factor, "Petitioner must demonstrate non-speculative prejudice."  Brown v. United States, No. CIV.A. 12-0710, 2012 WL 6016886, at *2 (W.D. Pa. Dec. 1, 2012) (citing United States v. Robles, 129 F. App'x 736, 738 (3d Cir. 2005)).  Prejudice to the defendant concerns only "the interests . . . which the speedy trial right was designed to protect."  Barker, 407 U.S. at 532.  There are three such interests:  "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  Id.  The impairment of defense is the "most serious" of the interests.  Id.

Petitioner does not identify any prejudice that he suffered by the delays.  In his original PCRA petition, Petitioner merely states that the delays "so undermined the truth-determining process that no reliable adjudication of guilt or innocence" could have happened.  SCR No. D18 ¶ 30.  This is a

vague and conclusory allegation that he suffered prejudice
through his defense being impaired.

When discussing the fourth Barker factor in his
objections to the R&R, Petitioner argues that he was "prejudiced
by trial counsel's ineffectiveness."  ECF No. 39 ¶¶ 65-66.
Petitioner further argues that he has been prejudiced by the
loss of "an individual's most valuable right, i.e., his right to
liberty."  Id. ¶ 66.  These are irrelevant arguments to the
showing of prejudice required by the fourth Barker factor.

Petitioner has not shown how the delays caused him
prejudice to his defense at trial.  The fourth Barker factor
weighs against Petitioner.

### 7.  Conclusion

On balance, Petitioner's failure to assert the claim
and the lack of prejudice to Petitioner's case outweigh any
loading on the scale that goes in his favor from the second
factor because to the extent the second factor weighs against
the Commonwealth, it is minor due to the short delay that was
caused by no more than negligence.

Accordingly, there is no merit to the argument that
Petitioner was denied his speedy trial rights under the Sixth
Amendment, thus Petitioner's habeas claim amounts to an argument
that trial counsel was ineffective for failing to raise a
meritless claim.  Once again, such a claim of ineffectiveness

fails because "there can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."  Bui, 795 F.3d at 366-67.

If the Sixth Amendment-based claim was properly before this Court for review, the Court would deny the Petition on this Ground.

## VI.  GROUNDS ONE, THREE, AND FIVE TO NINE

Petitioner conceded these grounds in his Objection to Report and Recommendation.  ECF No. 39 ¶ 20.  The Court approves the R&R on these grounds, and denies the Petition on these grounds.

## VII. CERTIFICATE OF APPEALABILITY

A petitioner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

The Court finds that there is no basis to issue a certificate of appealability in this case because Petitioner has not made a substantial showing of the denial of his constitutional rights.  See <u>Slack</u>, 529 U.S. at 483-84.

**VIII.     CONCLUSION**

The Court denies the Petition on all of the grounds raised by the Petitioner.